**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| BLEEK ESSENCE a/k/a/ | : | CIVIL ACTION |
| STEVEN EARLY | : | |
| | : | NO. 11-6848 |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| MIKE WENEROWICZ, et al., | : | |
| | : | |
| Respondents | : | |

_____

## REPORT AND RECOMMENDATION

**Henry S. Perkin, M.J.**                                                                 **June 4, 2012**

   Presently before the Court is the <u>pro se</u> Petition for Writ of Habeas Corpus[1] filed

by Bleek Essence a/k/a Steven Early ("Petitioner") pursuant to 28 U.S.C. section 2254.

Responses to the Petition were filed on January 31, 2012 and April 16, 2012.[2]  Pursuant to this

Court's Order dated May 1, 2012, Respondents also filed a second supplemental memoranda

addressing the opinion of the United States Supreme Court in the case of <u>Martinez v. Ryan</u>, 132

S. Ct. 1309, 182 L. Ed. 2d 272 (2012).[3]

   By order of November 22, 2011, the matter was assigned to the undersigned for

preparation of a Report and Recommendation.  For the reasons that follow, it is recommended

---

[1]  The Petition for Writ of Habeas Corpus was filed in the United States District Court for the Middle District of Pennsylvania on July 19, 2011.

[2]  The Answer and Memorandum of Law filed by Respondents on January 31, 2012, only addressed Grounds One through Four of the Petition.  On April 5, 2012, the undersigned directed Respondents to respond to Petitioner's remaining issues, Grounds Five through Eight.  On April 16, 2012, Respondents filed their Supplemental Answer to the Petition for a Writ of Habeas Corpus Addressing Grounds Five Through Eight.

[3]  Respondent's Second Supplemental Answer to the Petition for a Writ of Habeas Corpus Addressing _Martinez v. Ryan_, 132 S.Ct. 1309 (2012) was filed May 4, 2012.

that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

## I.   FACTS AND PROCEDURAL HISTORY.[4]

On October 6, 2006, following a jury trial before the Honorable Michael A. Georgelis in the Court of Common Pleas of Lancaster County, Petitioner was found guilty of three counts of robbery, four counts of criminal conspiracy to commit robbery, one count of robbery of a motor vehicle, one count of criminal conspiracy to commit robbery of a motor vehicle, one count of carrying a firearm without a license, and one count of resisting arrest.[5] On

---

[4]       This information is taken from the Petition for Writ of Habeas Corpus, the Responses thereto, and the attachments to those pleadings.  In addition, this Court ordered and reviewed the state court record in this matter. The information contained in the state court record has been considered and incorporated into this Report and Recommendation.

[5]       The Superior Court of Pennsylvania set forth the following relevant facts and procedural history:

> On July 25, 2005, two black men robbed two Turkey Hill convenience stores. The first robbery occurred at 5 West Clay Street in Lancaster, Pennsylvania, at approximately 5:00 a.m.  One of the men, wearing a number 97 football jersey, pointed a handgun at the clerk and demanded money.  The other man, wearing a gray, long-sleeved shirt and hat, reached into the cash register and took the money.  Both men had their faces covered with bandanas.

> The second robbery took place at 190 South Richland Avenue in York, Pennsylvania, at approximately 11:45 p.m.  As in the Lancaster robbery, the man wearing the number 97 football jersey guarded the cashier, while the man wearing the gray shirt took money from the cash register.  Additionally, both men wore hats and had bandanas covering their faces.

> Approximately one hour after the second Turkey Hill robbery, Ostell Henderson was driving his Buick Skylark down Third Street in Columbia, Pennsylvania, when he observed two males walking down the sidewalk.  Mr. Henderson eventually agreed to drive the men to a pay phone, and they proceeded to a nearby Turkey Hill.  Upon arriving at the Turkey Hill, one of the men pulled a handgun from his waistband, and Mr. Henderson fled from the vehicle, throwing the keys into the parking lot.  One of the men retrieved the keys and the suspects drove away in Mr. Henderson's vehicle.

> Shortly thereafter, Officer Art White of the Columbia Borough Police Department observed a vehicle matching the description of Mr. Henderson's vehicle.  Officer White followed the vehicle into a park, where the vehicle turned around and then attempted to evade Officer White.  A vehicle pursuit ensued, with Officer Marc Tremblay of the Columbia Borough Police Department joining the pursuit.  The suspects eventually exited the vehicle and fled on foot.

December 21, 2006, after a pre-sentence investigation, Petitioner was sentenced to an aggregate

term of fifteen to thirty years incarceration.

   Petitioner filed a post sentence motion challenging the trial court's refusal to sever

his trial and the charges.  Appendix, Volume II, Ex. F.  Petitioner also challenged the weight and

sufficiency of the evidence.  Appendix, Volume II, Ex. F.  The trial court denied the motion in an

opinion dated March 6, 2007.  Appendix, Volume II, Ex. G.

   Petitioner timely filed a direct appeal with the Pennsylvania Superior Court.  In so

doing, Petitioner briefed the following issues for the Superior Court's consideration:

> 1.  Whether the trial court improperly denied the [Petitioner]'s
> motion to sever his trial from that of the co-defendant's?
>
> 2.  Whether the trial court improperly denied the [Petitioner]'s
> motion to sever charges?
>
> 3.  Whether the verdict on all three informations was against the
> weight of the evidence?
>
> 4.  Whether the verdict on all three informations was insufficient as
> a matter of law?

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. I at

4, Ex. K at 3-4.  By memorandum decision filed April 28, 2008, the Superior Court rejected

Petitioner's claims, and affirmed the judgment of sentence of the trial court.  Commonwealth v.

Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K.  Petitioner sought

discretionary review by the Pennsylvania Supreme Court which was denied on September 8,

---

     Officer Tremblay observed both men discard several items, including a handgun
discarded by the co-defendant, Tyree Terrell Hughes, as the men fled from the
vehicle.  During the foot chase, the Defendant was unable to scale a fence and
was taken into custody by the officers.

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at 1-3.

2008.  <u>Commonwealth v. Early a/k/a Essence</u>, 956 A.2d 432 (Pa. 2008)(table); Appendix,

Volume II, Ex. K.

   On November 24, 2008, Petitioner timely filed a <u>pro se</u> petition under the

Pennsylvania Post Conviction Relief Act ("PCRA").[6]  <u>See</u> 42 Pa. C.S.A. § 9541, <u>et seq.</u>  Counsel

was appointed and an amended petition was filed on April 13, 2009.  Appendix, Volume II, Ex.

M.  The following claims were presented in the amended petition: (1) trial court error in giving a

defective instruction concerning identification testimony and (2) trial counsel ineffectiveness for

failure to object to the trial court's faulty instruction concerning identification testimony.

Appendix, Volume II, Ex. M.

   The PCRA court notified Petitioner of its intent to dismiss the petition without a

hearing on September 18, 2009.  <u>See</u> PA. R. CRIM. P. 907; <u>Commonwealth v. Essense</u>, 4 A.3d

687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. O.  The PCRA court subsequently

dismissed the petition on October 28, 2009.  <u>Commonwealth v. Essense</u>, 4 A.3d 687 (Pa. Super.

2010)(table); Appendix, Volume II, Ex. P.

---

[6]  Petitioner raised the following issues in his <u>pro se</u> PCRA petition:

   (1) Counsel was ineffective for failure to request DNA exam and properly
   investigate the only physical evidence (clothing).

   (2) Counsel was ineffective for failure to object to inconsistent testimony given
   by prosecution witness.

   (3) Petitioner's Sixth Amendment right to a fair trial was violated when he was
   forced to go to trial jointly with co-defendant and when "chain of custody" was
   breached in collection of evidence.

Appendix, Volume II, Ex. M.

Petitioner appealed to the Superior Court.  In so doing, Petitioner averred that the trial court erred in dismissing his claim that trial counsel was ineffective for failing to object to and/or supplement the Kloiber[7] instruction.  Commonwealth v. Essense, 4 A.3d 687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. S at 3.  The Superior Court affirmed the PCRA court on June 15, 2010. Commonwealth v. Essense, 4 A.3d 687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. S.  Thereafter, Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  The Supreme Court declined review on November 30, 2010. Commonwealth v. Essense, 13 A.3d 475 (Pa. 2010)(table).

On July 19, 2011, Petitioner filed the instant pro se Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Pennsylvania.  United States Magistrate Judge Malachy E. Mannion recommended that the Petition be transferred to this district, and the recommendation was adopted by United States District Judge A. Richard Caputo on October 25, 2011.  The Petition was transferred to this district on October 31, 2011.

On November 22, 2011, this case was referred by the Honorable Timothy J. Savage for preparation of a Report and Recommendation.  An Answer and Memorandum of Law was filed by Respondents on January 31, 2012.  The initial Answer only addressed Grounds One through Four of the Petition.  On April 5, 2012, the undersigned directed Respondents to respond to Petitioner's remaining issues, Grounds Five through Eight.  On April 16, 2012, Respondents filed their Supplemental Answer to the Petition for a Writ of Habeas Corpus Addressing Grounds Five Through Eight.  Pursuant to this Court's Order dated May 1, 2012, Respondents also filed a

---

[7]    See Commonwealth v. Kloiber, 378 Pa. 412, 106 A.2d 802 (1954), cert. denied, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed.2d 688 (1954).

second supplemental memoranda addressing the opinion of the United States Supreme Court in the case of <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).  Respondent's Second Supplemental Answer to the Petition for a Writ of Habeas Corpus Addressing *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) was filed May 4, 2012.

The Petition before this Court seeks a determination of numerous issues, all of which will be addressed in the discussion section below.  Respondents deny that Petitioner is entitled to a grant of the Petition because they claim that his allegations are either without merit or are procedurally defaulted.  Thus, Respondents contend that Petitioner's application should be dismissed with prejudice.

## II.    <u>STANDARD OF REVIEW.</u>

### A.  HABEAS CORPUS PETITIONS.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is codified at 28 U.S.C. § 2254(d), a habeas corpus petition can only succeed if Petitioner can show that (i) the state court's resolution of his claim was contrary to, or an objectively unreasonable application of, clearly established federal law and (ii) his claim is exhausted.  <u>See</u> 28 U.S.C. § 2254(d)(1); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002); <u>Berryman v. Morton</u>, 100 F.3d 1089, 1103 (3d Cir. 1996).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  <u>Lambert v. Blackwell</u>, 387 F.3d 210, 234

(quoting Williams v. Taylor, 529 U.S. at 362, 405-406 (2000)).  "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Id. (quoting Williams, 529 U.S. at 407).  An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable.  Williams, 529 U.S. at 407.  Clearly established federal laws are the holdings, not the dicta of the Supreme Court.  Id. at 390.

State court factual determinations are also given considerable deference under the AEDPA.  Lambert, 387 F.3d 239.  Petitioner must establish that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).[8]

## B.   EXHAUSTION AND PROCEDURAL DEFAULT.

Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition.  See Anderson v. Harless, 459 U.S. 4, 7 (1982).  If a petition's claims have not been exhausted, and a petitioner is

---

[8]    Within this overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision.  See 28 U.S.C. § 2254(e)(1); Lambert, 387 F.3d at 235-236.  Section 2254(e)(1) instructs that "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

time-barred from presenting those claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits.  28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  However, a procedurally defaulted claim may still succeed where a petitioner can show either (i) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 749 (1991).  Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule."  Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002)(quoting Coleman, 501 U.S. at 753).  Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage.  United States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001)(quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. 298, 327 (1995); Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir. 2001).  The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup, 513 U.S. at 327.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

Claims for ineffectiveness of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984).[9]  Under Strickland, counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In addition, a petitioner must prove prejudice.  In order to do so, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable."  Id.  Thus, a petitioner must show a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is sufficient to undermine confidence in the outcome."  Id. at 694.  This determination must be made in light of "the totality of the evidence before the judge or jury."  Id. at 695.

The United States Court of Appeals for the Third Circuit has cautioned that "[o]nly the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."  Beuhl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527 U.S. 1050 (1999) (quoting U.S. v. Gray, 878 F.2d 702, 711 (3d Cir.

---

[9]       In Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the United States Supreme Court reaffirmed the continued applicability of the Strickland standard in federal habeas corpus cases.  See also Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

1989)).  Under the revised habeas corpus statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well.  Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996).  Recently, the Supreme Court acknowledged that "[s]urmounting Strickland's high bar is never an easy task."  Premo v. Moore, 131 S. Ct. 733, 739 (2011) (quotation omitted).  The Court explained that the relevant "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Id. at 740 (citing Strickland, 466 U.S. at 690).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation.  Petitioner must also show that the prosecutor's acts so infected the trial as to make his conviction a denial of due process.  Greer v. Miller, 483 U.S. 756, 765 (1987)(citation omitted).  Petitioner must show that he was deprived of a fair trial. Smith v. Phillips, 455 U.S. 209, 221 (1982); Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993) (citations omitted) (stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

Where the state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1).

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4, 124 S. Ct. 1 (2003) (*per curiam*) (citations omitted).  The

Supreme Court recently elaborated on this standard:

> Establishing that a state court's application of Strickland was
> unreasonable under §2254(d) is all the more difficult.  The
> standards created by Strickland and § 2254(d) are both "highly
> deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n. 7,
> 117 S. Ct. 2059 . . . , and when the two apply in tandem, review is
> "doubly" so, Knowles, 556 U.S. at 123, 129 S. Ct. at 1420.  The
> Strickland standard is a general one, so the range of reasonable
> applications is substantial.  556 U.S. at 123, 129 S. Ct. at 1420.
> Federal habeas courts must guard against the danger of equating
> unreasonableness under Strickland with unreasonableness under §
> 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there
> is any reasonable argument that counsel satisfied Strickland's
> deferential standard.

Premo, 131 S. Ct. at 740 (citations omitted).

## III.   **DISCUSSION**.

### Ground One - Whether the Trial Court Improperly Denied
### Petitioner's Motion to Sever Individual Complaints and Trial

Initially, Petitioner contends that his constitutional rights were violated because

the trial court denied his motion to sever the trial from that of his co-defendant.  More

specifically, Petitioner alleges that he was prejudiced because there was more evidence against

his co-defendant which the jury could not compartmentalize.  Petition at 6.

The United States Supreme Court has explained that "[i]mproper joinder does not,

by itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional

violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right

11

to a fair trial." United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). "[A] criminal defendant has

no constitutional right to severance unless there is a strong showing of prejudice caused by the

joint trial." Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998). See also Jenner v. Class,

79 F.3d 736, 741 (8th Cir. 1996) (holding that habeas relief based on the trial court's failure to

grant severance is only appropriate where petitioner "can establish that the failure to grant

severance rendered his trial fundamentally unfair"); Lewis v. Huch, 964 F.2d 670, 676 (7th Cir.

1992) (failure to sever will only warrant habeas relief where the trial court's refusal to grant

severance was an abuse of the trial court's discretion and that this abuse resulted in a trial that

was fundamentally unfair).

       Fundamental unfairness can be shown where the defenses presented by two

defendants are truly "mutually exclusive, such that the jury could not believe the core of one

defense without discounting entirely the core of the other." United States v. Dirden, 38 F.3d

1131, 1141 (10th Cir. 1994).  Codefendants' attempts to cast blame on one another are, as a

general rule, insufficient. Id.; Hood v. Helling, 141 F.3d 892, 897 (8th Cir. 1998) ("Accusations

between codefendants at a joint trial and the admission of evidence by one party that is harmful

to the other do not necessarily make a trial fundamentally unfair.")

       The Superior Court considered this claim on the merits on direct appeal and

rejected it.  More specifically, after considering the appropriate case law on severance, the

Superior Court concluded as follows:

> [Petitioner] was not prejudiced by being tried jointly with co-
> defendant Hughes.  The defendants were charged with committing
> a series of three robberies which occurred within 24 hours of each
> other and within a relatively close proximity.  The defendants were

> charged with multiple counts of conspiracy, making a joint trial
> preferable.  Contrary to [Petitioner]'s assertions, the record reveals
> that the evidence adduced at trial did not conflict concerning the
> roles of each defendant.  Neither [Petitioner] nor [co-defendant]
> Hughes offered testimony or evidence in their defense.  Our review
> of the record reveals that each defendant argued that the
> Commonwealth failed to positively identify them as a person who
> committed the robberies.  Thus, it cannot be argued that their
> defense strategies were antagonistic.  Nor can it be argued that one
> defense theory required the jury to believe one defendant rather
> than the other.  Therefore, the motion for severance was properly
> denied.

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at

5-6.  Based on our review of this claim, we conclude that Petitioner has failed to demonstrate that

the trial court erred in denying his motion for a separate trial from that of his co-defendant.

Petitioner has failed to show that his trial was fundamentally unfair and that there was an error of

constitutional magnitude.

Petitioner further contends that his constitutional rights were violated by the

consolidation of the three robbery informations for trial.  Petitioner alleges that the three

informations should not have been tried together because the three robberies lacked similarities,

and that in separate trial evidence of one crime would not have been admissible in the trial of the

two others.  Petition at 6.  This claim is exhausted, but meritless.

On direct review, the Superior Court examined Pennsylvania case law and found

that offenses charged in separate informations may be tried together if they are "based on the

same act or transaction" or if "the evidence of each of the offenses would be admissible in a

separate trial for the other and is capable of separation by the jury so that there is no danger of

confusion" Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume

II, Ex. K at 6 (citing Pa. R. Crim. P. 582(A)(1).  The Superior Court also noted the following

factors:

> The Pennsylvania Supreme Court has established a three-part test
> for deciding the issue of joinder versus severance of offenses from
> different informations.  ***Commonwealth v. Lark***, 518 Pa. 290, 543
> A.2d 491 (1988).  The court must determine whether the evidence
> of each of the offenses would be admissible in a separate trial for
> the other; whether such evidence is capable of separation by the
> jury so as to avoid danger of confusion; and if the answers to these
> inquiries are in the affirmative, whether the defendant will be
> unduly prejudiced by the consolidation of the offenses.  ***Id.***  At 302,
> 543 A.2d at 497, quoting ***Commonwealth v. Collins***, 550 Pa. 46,
> ___, 703 A.2d 418, 422 (1997).

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at

6-7.

The Superior Court correctly applied Pennsylvania law, reasoning as follows:

> Instantly, the charges were properly consolidated for the purpose of
> trial as all of the elements of the ***Lark*** test are met. [Petitioner] was
> charged with three robberies occurring within 24 hours of each
> other.  The same kind of convenience store, Turkey Hill, was the
> subject of two of the robberies.  The robberies had striking
> similarities: each involved the use of a handgun and each involved
> perpetrators wearing a Number 97 football jersey and a gray, long-
> sleeved shirt.  Eyewitness testimony and video surveillance
> revealed that the robberies were committed by two black men
> wearing the aforementioned clothing.  The same clothing was
> recovered in the area of the third robbery.  Evidence of each of the
> robberies would be admissible in a prosecution for the other, as the
> evidence constitutes a "chain or sequence of events that formed the
> history of the case, [and] is part of the natural development of the
> case."  ***Commonwealth v. Drumheller***, 570 Pa. 117, 138, 808 A.2d
> 893, 905 (2002), ***cert. denied***, 539 U.S. 919 (2003).  ***See also Lark***,
> ***supra*** at 303, 543 A.2d at 497 (discussing "***res gestae***" or
> "complete story" evidence, including evidence of other crimes, as
> admissible to show context of the crime and thus complete the
> story of the crime).  The evidence of each of the offenses would

14

have been admissible in the separate trial for the other.  The
evidence of the robberies would have been admitted in separate
trials to show the common scheme and plan and to identify
[Petitioner].  Information about the robberies was necessary to
establish the natural development of the facts of the cases.

We also find that the evidence was easily separable by the jury into
different incidents that give rise to different crimes.  We find no
reason to suspect jury confusion.  The cases were properly joined
because [Petitioner]'s charges were not so technical and complex
in nature that there was a danger of confusion to the jury by
consolidating them.  The charges were capable of separation
because of the specific circumstances and the separate victims.
The trial court gave clear directions to the jury, making even less
likely any danger of confusion.

Finally, [Petitioner] has not established undue prejudice in
consolidation of the offenses for trial.  The prejudice standard of
Rule 583 requires the defendant show that the evidence at trial
tended to convict a defendant only by showing his propensity to
commit crimes or because the jury would be incapable of
separating the evidence or could not avoid cumulating the
evidence.  ***Commonwealth v. Newman***, 528 Pa. 393, ___, 598
A.2d 275, 278 (1991), quoting ***Lark***, ***supra*** at 307, 543 A.2d at
499.  Based upon our foregoing discussion, such prejudice was
clearly not present in the instant matter.  The trial court did not
abuse its discretion in consolidating the offenses for trial.

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at

7-9.

The Superior Court appropriately catalogued the similarities between the

robberies, adequately demonstrating that the perpetrators committed the three robberies in

furtherance of a common scheme.  This comparison belies Petitioner's argument that the

informations were improperly consolidated.  They were consolidated because of the factors

elucidated by the Superior Court.

15

We note further that consolidation is an issue of state law in which the trial court is given sole discretion, only reversed for "a manifest abuse of discretion or prejudice and clear injustice to the defendant." Commonwealth v. Newman, 528 Pa. 393, 398, 598 A.2d 275, 277 (1991)); see Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Because Petitioner has not proven that the trial court's evidentiary decisions were a manifest abuse of discretion or resulted in clear injustice, his claims are noncognizable.

In conclusion, because the Superior Court's rejection of Petitioner's severance claims were neither contrary to nor an unreasonable application of clearly established federal law, Petitioner cannot be granted relief via habeas review. 28 U.S.C. § 2254(d). These claims must be denied.

Grounds Two and Four - Whether the Evidence
Was Sufficient to Support Petitioner's Conviction

Petitioner claims that the evidence presented at trial was insufficient to support his conviction.[10] Petitioner exhausted this claim in his direct appeal before the Pennsylvania Superior Court, and, therefore, it is properly before this Court on habeas review.

The standard of review for challenges to the sufficiency of the evidence on habeas review was set forth in Jackson v. Virginia, 443 U.S. 307, 316 (1979), where the Supreme Court explained:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself

---

[10] Petitioner's second claim avers that the evidence presented at trial was insufficient to support his conviction. His fourth claim is whether the verdict on all three informations was insufficient as a matter of law. Petitioner asserts that the Commonwealth presented no evidence to establish that he participated in any of the three robberies. Because these asserted grounds for relief are synonymous, we will address them together.

> whether it believes that the evidence at the trial established guilt beyond a reasonable doubt . . . . Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-319.  Review of the evidence must be based upon state law; that is, the ultimate question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law.  Id. at 324 n.16.

Here, the Pennsylvania Superior Court's determination that the evidence adduced at trial was sufficient to support the conviction was in no way contrary to, or an unreasonable application of the Jackson standard.  In reviewing this claim, the Superior Court stated the following:

> [Petitioner]'s sufficiency argument is based solely on the theory that there was no evidence that connected him to the clothing or the firearm recovered at the scene of the third robbery.  In other words, [Petitioner] claims that the evidence presented was purely circumstantial.  This argument is to no avail.  "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence."  **Commonwealth v. Zingarelli**, 839 A.2d 1064, 1069 (Pa. Super. 2003).

> There is clearly enough circumstantial evidence in this case to substantiate the jury's verdict beyond a reasonable doubt.  The clerk at the Lancaster Turkey Hill convenience store testified that one of the perpetrators wore a gray long-sleeved T-shirt.  The video surveillance depicted the gunman wearing a football jersey with the Number 97 printed on the front and back and that the accomplice was wearing a gray long-sleeved T-shirt.  The clerk at the York Turkey Hill robbery testified that one of the robbers wore a light blue jersey and the other wore a gray long-sleeved jersey.  The video surveillance from the York store also depicted the gunman in a football jersey with the Number 97 on the front and back and the

accomplice wearing a gray long-sleeved T-shirt.

The victim of the car-jacking identified [Petitioner] as one of the men who stole his car, and the Commonwealth established that the evidence found on the ground near the vehicle was connected to the carjacking.  During the pursuit, Officer Tremblay observed two black males exit the vehicle, "running and throwing stuff on the ground." (Notes of testimony, 10/4/06 at 393.)  The items recovered included two bandanas, two blue denim hats, a black leather glove, a Polo brand long-sleeved gray shirt, and a football jersey with the Number 97 imprinted on the front and back.  (***Id.*** at 412-414.)

Furthermore, [Petitioner] was arrested following an uninterrupted pursuit of the car stolen in the carjacking.  Officer Tremblay pursued [Petitioner] on foot; [Petitioner] was unable to scale a fence, was grabbed by the officer but broke free and continued running.  At this point, Officer Tremblay was relieved by Officer Clancy who continued the uninterrupted pursuit of [Petitioner].  Officer Clancy eventually tackled [Petitioner] in a parking lot and arrested him.

When viewing the above-related circumstantial evidence and all reasonable inferences deducible therefrom in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support the convictions.

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at

9-11.  In addition, as pointed out by Respondents, the three robberies occurred close in time to

each other, police response to the carjacking was immediate, the suspect vehicle was identified

by an officer within ten minutes of his receipt of the call, and following a vehicle pursuit and foot

pursuit, Petitioner was apprehended and positively identified by the officer at trial.  See Answer

filed January 31, 2012 at 16.

Under AEDPA, review for sufficiency of the evidence means a determination of whether the state court disposition was an objectively unreasonable application of the <u>Jackson</u> standard.  <u>See</u> <u>Williams</u>, 529 U.S. at 379-390.  The Superior Court's rejection of Petitioner's sufficiency claim was not objectively unreasonable under <u>Jackson</u> because reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt.   Because this rejection, pursuant to Pennsylvania law, was neither contrary to nor an unreasonable application of clearly established federal law, Petitioner cannot be granted relief via habeas review.  28 U.S.C. § 2254(d).  These claims must be denied.

<u>Claim Three - Whether the Verdict Was Against the Weight of the Evidence</u>

Petitioner next contends that the trial court's verdict was against the weight of the evidence.  Petitioner previously presented this claim to the Superior Court on direct appeal.  Upon review, however, the Superior Court rejected this claim by stating as follows:

> Finally, in a rather summary fashion, [Petitioner] alleges that the verdict was against the weight of the evidence.  As we have repeatedly stated,
>
> > [t]he decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court.  Absent an abuse of discretion its denial of such a motion will not be disturbed.
>
> ***Commonwealth v. Griffin***, 511 Pa. 553, 561, 515 A.2d 865, 869 (1986), citing ***Commonwealth v. Zapata***, 447 Pa. 322, 290 A.2d 114 (1972).  As [Petitioner] has failed to demonstrate that the evidence produced by the Commonwealth was so unreliable or contradictory as to make any verdict based thereon against the

> weight of the evidence, he has failed to carry his burden to show
> that the trial court abused its discretion in denying the motion for a
> new trial.  ***Commonwealth v. Karkaria***, 533 Pa. 412, 625 A.2d
> 1167 (1993), ***quoting Commonwealth v. Farquharson***, 467 Pa.
> 50, 354 A.2d 545 (1976) (an allegation that the verdict is against
> the weight of the evidence is primarily to be resolved by the trial
> court as it has the benefit of seeing the witnesses).

Commonwealth v. Early, 953 A.2d 827 (Pa. Super. 2008)(table); Appendix, Volume II, Ex. K at

11-12.

        Petitioner's challenge to the weight of the evidence must be denied because it is

not cognizable for federal habeas corpus relief.  A federal court has no power to grant habeas

relief to a state prisoner who claims that his conviction is against the weight of the evidence.  See

Tibbs v. Florida, 457 U.S. 31, 42-45 (1982) (weight of the evidence claim raises questions of

credibility); Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (state courts' credibility

determinations are binding on federal court); Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir.

2000)(same); Capitol v. Nish, No. 09-16, 2011 U.S. Dist. LEXIS 119612, at *9 n.4 (W.D. Pa.

Aug. 25, 2011) ("In conducting habeas review for a state prisoner such as Petitioner, this Court is

limited to deciding whether his state conviction violated the Constitution of the United States, 28

U.S.C. § 2254(a), and may not rule on issues of purely state-law error.") (Report and

Recommendation approved and adopted by Order dated Oct. 12, 2011); Jones v. Pitkins, No. 11-

927, 2011 U.S. Dist. LEXIS 119753, at *17-18 (E.D. Pa. Aug. 5, 2011) (same) (Report and

Recommendation approved and adopted by Order dated Oct. 14, 2011).

Ground Five - Whether Trial Counsel Was Ineffective for
Failing to Request a DNA Examination of the Physical Evidence

Petitioner contends that his trial counsel was constitutionally ineffective because he did not properly investigate the physical evidence (clothing) or request a DNA examination. Respondents initially assert that this claim is procedurally defaulted.  Although they may be correct, we will, nonetheless, determine this claim by evaluating it on the merits.[11]

We note initially that Petitioner has offered nothing more than a bald assertion regarding this allegation of attorney ineffectiveness.[12]  There is no support in the record that requesting an examination of the clothing would have proved that Petitioner did not commit the crimes at issue.  Moreover, as noted by Respondents, there is no factual evidence that any DNA material existed on the clothing at issue or that any hair or other bodily material had been collected which could have been tested.

---

[11]     The United States Supreme Court in Martinez v. Ryan, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), created a narrow exception to Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Coleman established the rule that attorney error in post-conviction collateral proceedings does not constitute cause to excuse procedural default.  Martinez provides an exception to that rule by holding that ineffective assistance of counsel at initial-review collateral proceedings may establish cause to excuse procedural default of a claim of ineffective assistance at trial.  The Court in Martinez reasoned that in situations where the first occasion to raise a claim of ineffective assistance at trial is in a collateral proceeding and an attorney errs, it is likely that no state court at any level will hear the prisoner's claim.  "And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."  Martinez, 132 S.Ct. at 1316.  In an abundance of caution, we will address Petitioner's claims of trial counsel ineffectiveness on the merits.

[12]     It is Petitioner's burden to articulate his allegations in a clear and direct manner.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991)(petitioner could not meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense.)  See also Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir. 1987), cert. denied, 484 U.S. 946 (1987)(petitioner's vague and general allegations fail to make sufficient showing to justify relief).

21

Respondents cite the decision of the United States Court of Appeals for the Third Circuit in Chambers v. Secretary Pennsylvania Department of Corrections, 442 Fed. Appx. 650, 655-656 (3d Cir. 2011), as support for their assertion that trial counsel was not ineffective for failing to have the physical evidence (clothing) tested for DNA.  We find that case authoritative. In that case, the Third Circuit likened the facts of the case before it to a case determined by the First Circuit, noting that:

> There, as here, petitioner asserted ineffective assistance because his lawyer did not "test and present 'potentially exculpatory forensic evidence [from] the crime scene[,]'" . . ., including fingerprints, hair, and other DNA-containing materials, but instead emphasized the prosecution's failure to test those items . . . . Rejecting the ineffective assistance claim, the First Circuit observed that "[d]efense counsel had to consider the likelihood that further forensic testing . . . would have provided a link" between defendant and the murder, and "[c]ounsel's judgment in situations like this is accorded great respect."

Chambers, 442 Fed.Appx. at 655-656 (citations omitted).

It is clear that based on our review of the trial testimony and summation in this matter, trial counsel's strategy was to argue that there was no physical evidence linking Petitioner to the convenience store robberies.  Appendix, Volume I, Ex. A at 73, 488, 491, 500-501, 503. In this matter, as the Third Circuit concluded in Chambers, trial counsel could have reasonably determined that it was better to criticize the Commonwealth's case for lack of evidence than to risk obtaining proof of Petitioner's guilt by requesting DNA testing of the physical evidence seized.[13]  Accordingly, we conclude that Petitioner has failed to show that trial counsel was

---

[13]     Stated another way, the question was not whether counsel was correct in concluding that the forensic evidence might have inculpated petitioner, but rather, whether counsel's decision not to seek the evidence was defensible as a matter of trial strategy.  Chambers, 442 Fed.Appx. at 655.

unreasonable for avoiding a comparison test that might have provided the prosecution with damning evidence tying him to the convenience store robberies.

     In the present case, the record is clear, especially given the evidence that ties Petitioner to the car jacking of the vehicle in which the clothing was discovered,[14] that trial

---

[14]    As noted by Respondents and as the Superior Court determined, the following evidence tied Petitioner to the car jacking of Ostel Henderson's vehicle in which the clothing was discovered:

- Video recordings and testimony of witnesses to a robbery of a Turkey Hill convenience store in Lancaster City, during which two African American males entered the store and took money from the register. One of the suspects was wearing a dark blue football jersey, had wrapped a dark colored handkerchief around his face, and was carrying a handgun. The other suspect was wearing a long-sleeved gray T-shirt and a fishing hat. That robbery occurred at 5:00 a.m. on June 25, 2005.

- Video recordings and testimony of witnesses to a robbery of a Turkey Hill convenience store in York county, during which two "brown skinned" robbers entered the store and demanded money. One of the suspects was wearing a blue football jersey. The other suspect wore gray long-sleeved shirt. Both individuals were carrying firearms. That robbery occurred at 11:45 p.m. on June 25, 2005.

- Approximately one hour after the second Turkey Hill robbery, at 12:45 a.m., Mr. Henderson observed two African American males walking along the street, and offered to drive them to find a pay phone. The two males entered the car, with one sitting in the front passenger seat and the other sitting in the back seat. When they reached the parking lot of a Turkey Hill convenience store, the person in the front passenger seat then displayed a firearm, and ordered Mr. Henderson to relinquish his vehicle. Mr. Henderson threw his keys out of the window and fled. The robbery of Mr. Henderson was immediately reported to the police.

- A dispatch reporting the robbery of Mr. Henderson was broadcast within minutes of the incident, and police officers responded to the scene. While the officers were not able to locate the vehicle immediately, they maintained patrols in the area, and twenty-five to thirty minutes later located and pursued Mr. Henderson's vehicle.

- During the pursuit, one of the responding officers observed two African American males flee from Mr. Henderson's vehicle, and was able to identify [Petitioner] and codefendant at trial as the individuals he had observed. Both [Petitioner] and codefendant were apprehended following a foot chase.

- Police officers found in Mr. Henderson's vehicle a reversible blue football jersey, as well as a long sleeved gray T-shirt, which Mr. Henderson did not own. Additionally, one of the pursuing officers observed codefendant drop a firearm during the foot chase, and later recovered a Smith and Wesson .45 caliber pistol.

Commonwealth v. Essense, 4 A.3d 687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. S at 7-9.

counsel made a reasonable decision as to the scope of her investigation of the case.[15]

Accordingly, we conclude that Petitioner has not identified any decision of the trial court or the

appellate court which is contrary to, or an unreasonable application of, Sixth Amendment

jurisprudence.  Petitioner, therefore, does not meet his burden of proving ineffective assistance of

counsel on this claim.

<u>Ground Six - Whether Trial Counsel Was Ineffective for Failing
to Object to Inconsistent Trial Testimony Given by a Prosecutorial Witness</u>

Petitioner asserts that trial counsel was ineffective for failing to object to the

inconsistent trial testimony of Ostel Henderson, the car jacking victim.  More specifically,

Petitioner asserts that Mr. Henderson testified at the preliminary hearing, and signed statements

averring, that he was unable to identify the person in the back seat of his car.  At trial, however,

Mr. Henderson identified Petitioner as the individual who was in the back seat of his car.

Petitioner contends that trial counsel erred by failing to object to this in-court identification.

Respondents have initially asserted that this claim is procedurally defaulted.  As expressed in the

prior ineffectiveness issue, however, we will likewise review this claim on the merits in an

abundance of caution given the United States Supreme Court recent holding in <u>Martinez v. Ryan</u>,

132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

Similar to his prior claim of trial counsel ineffectiveness, Petitioner has again

offered nothing more than a bald assertion regarding this allegation.  See <u>Zettlemoyer v.</u>

---

[15]     "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . .  The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  <u>Strickland v. Washington</u>, 466 U.S. 668, 690-691 (1984).

Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991)(petitioner could not meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense).  Nevertheless, we conclude that Petitioner's claim is without merit.

Rather than objecting to the inconsistent trial testimony of Mr. Henderson elicited by the Commonwealth during direct examination, we note that trial counsel appropriately attacked Mr. Henderson's inconsistent testimony and reliability during cross examination. Appendix, Volume I, Ex. A at 222, 224-225, 240, 243-244.  Trial counsel also properly attacked the inconsistencies during her closing argument by stating as follows:

> And remember Ostell Henderson, he may have sat up here and said I know it was these two guys that night and I know it was these two guys and I know [Petitioner] was the one who sat in the front seat and pulled the gun.  That's not what he told Officer Tremblay that night [after Petitioner's arrest].  He made a statement to Officer Tremblay that's different than what he says here.

> In the law we call that a prior inconsistent statement.  And when somebody makes a prior inconsistent statement, you can conclude that the person is confused, that they're lying, that they're unreliable.

> You can choose to believe or disbelieve everything that Ostell Henderson said in this courtroom because of that prior inconsistent statement.

Appendix, Volume I, Ex. A at 503.

Based on our review of the record, it is clear that the inconsistent testimony of Mr. Henderson did not go unaddressed or even unnoticed by the jury.  Trial counsel appropriately brought out in testimony the issues with Mr. Henderson's identification testimony including, but not limited to, his failure to identify Petitioner at the preliminary hearing.  Appendix, Volume I, Ex. A at 222, 224-225, 240, 243-244.  Trial counsel presented targeted arguments based upon the inconsistent testimony as to her contention the Mr. Henderson's identification should be viewed skeptically.  Appendix, Volume I, Ex. A at 503, 509, 510-511, 512-515.  The jury heard the testimony, listened to the arguments of counsel and should be considered to have heard and applied the trial court's instruction with respect to how they were to consider identification testimony.  For these reasons, as well as those discussed in the context of Petitioner's eighth ground for relief, *infra*, we conclude Petitioner has failed to identify any decision of the court which is contrary to, or an unreasonable application of clearly established federal law and he, consequently, does not meet his burden of proving ineffective assistance of counsel on this claim.

<u>Ground Seven - Whether Petitioner's Right to Due Process Was Violated</u>
<u>When the "Chain of Custody" of the Evidence Collected Was Breached</u>

It is well established that a prisoner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a district court may entertain a federal petition for habeas corpus.  28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 847 (1999); <u>Evans v. Court of Common Pleas, Del. County, Pa.</u>, 959 F.2d 1227, 1230 (3d Cir. 1992).[16]  "The exhaustion requirement ensures that state courts have the first opportunity to

---

[16]     On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement.  This order is not to be applied retroactively.  <u>See</u> <u>Wenger v. Frank</u>, 266 F.3d 218, 225 (3d Cir. 2001), <u>cert. denied,</u> 535

review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.), cert. denied, 504 U.S. 944 (1992).  To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Petitioner must show that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts.  Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted), cert. denied, 493 U.S. 1036 (1990).

However, when the petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally bars federal habeas corpus review.  Coleman v. Thompson, 501 U.S. 722, 729-32 (1991); Sistrunk v. Vaughn, 96 F.3d 666, 674-75 (3d Cir. 1996).  The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

Coleman, 501 U.S. at 735 n.1.  Upon a finding of procedural default, review of a federal habeas petition is barred unless the habeas petitioner can demonstrate (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law", or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Taylor, 501 U.S. 722,

U.S. 957 (2002).

27

750 (1990); <u>Peterkin v. Horn</u>, 176 F. Supp. 2d 342, 353 (E.D. Pa. 2001).

   Petitioner can demonstrate cause for procedural default if he can show that some objective factor external to the defense impeded or prevented his ability to comply with the state procedural rules.  <u>Caswell</u>, 953 F.2d at 862.  While ineffectiveness of counsel may, in some instances, constitute "cause" to excuse procedural default, <u>Murray v. Carrier</u>, 477 U.S. 478, 488-489 (1986),[17] in order to qualify, the ineffectiveness alleged must arise to an independent constitutional violation which claim itself must also be presented to state court.  <u>Edwards v. Carrier</u>, 529 U.S. 446 (2000).

   To show prejudice, petitioner must present evidence that this factor did more than merely create a possibility of prejudice; it must have "worked to [petitioner's] actual and substantial disadvantage."  <u>Murray</u>, 477 U.S. at 494 (emphasis in original) (<u>quoting</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  Additionally, the fundamental miscarriage of justice exception to procedural default is only concerned with "actual" innocence and petitioner must show that it is more likely than not that no reasonable juror would have convicted him absent the claimed error.  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).

   Petitioner's current claim was not raised in the state appellate courts.  Accordingly, this claim is unexhausted in the state courts.  <u>See</u> <u>Baldwin v. Reese</u>, 124 S.Ct. 1347, 1349 (2004)("To provide the State with the necessary 'opportunity', the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

---

   [17]  "[A] claim of ineffective assistance" must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  <u>Murray</u>, 477 U.S. at 489.

Petitioner's unexhausted claim is now procedurally defaulted; such claim could be raised only in a second PCRA petition, which is now barred by the one-year statute of limitation. See 42 Pa. Cons. Stat. Ann. § 9545(b); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002) ("It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals."), cert. denied, 537 U.S. 1195 (2003).

Petitioner cannot demonstrate any factor external to the defense that prevented him from raising this claim in the state appellate courts.  Accordingly, this court cannot excuse the procedural default because Petitioner has shown neither cause for the default[18] nor that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. The court cannot review Petitioner's unexhausted claim and it must be dismissed with prejudice.

Ground Eight - Whether the Trial Court Gave Adequate<br>and Proper Instructions to the Jury Concerning Identification

Finally, Petitioner asserts that an inadequate Kloiber charge[19] was given to the jury, and that counsel was ineffective for not pursuing a proper Kloiber charge.  We note, however, that a Kloiber instruction is a matter of state law, and generally not a valid basis for

---

[18]    To the extent that Petitioner alleges that his "cause" is really one of ineffective assistance of PCRA counsel, i.e. failure to include this claim in the amended PCRA petition, we conclude that this "cause"  assertion was not properly exhausted in state court and, therefore, would not excuse default.  Moreover, we note that Petitioner is not entitled to habeas relief regarding his allegations of ineffectiveness of PCRA counsel.  See Pennsylvania v. Finley, 481 U.S. 551, 556 (1987)(stating that there is no right to counsel in state collateral proceedings after exhaustion of direct appellate review).

[19]    In Kloiber, the Supreme Court of Pennsylvania determined that "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."  Kloiber, 106 A.2d at 826-827.

federal habeas review.[20]  See Swainson v. Varner, No. 99-CV-6480, 2002 WL 241024, at *8

(E.D. Pa. Feb. 19, 2002)(citations omitted).  This claim is exhausted, but meritless.

We note that the trial court gave the following Kloiber instruction:

> Also, identification of the individuals involved in these incidents
> has been an issue and is one for your determination.  A victim or
> other witness can sometimes make a mistake when trying to
> identify a criminal.

> If certain factors are present, the accuracy of the identification
> testimony is so doubtful that a jury must receive it with caution.

> Identification testimony must be received with caution if the
> witness, because of bad position, poor lighting or other reasons did
> not have a good opportunity to observe the criminal or if the
> witness in his testimony is not positive as to the identity or if the
> witness's positive testimony as to the identity is weakened by
> qualifications, hedging or inconsistencies in the rest of his
> testimony or if before the trial the defendant's request for a line-up
> to test the ability of the witness to make an identification was
> denied.

> If you believe that one or more of these factors is present, then you
> must consider with caution the testimony identifying a defendant as
> the person who committed the crime as charged.

> If, however, you do not believe that one of these factors is present,
> you need not receive the identity testimony with caution.  You may
> treat it like any other testimony.

> The whole area of identification evidence is a particularly sensitive

---

[20]    "Although the Kloiber charge is required in appropriate instances by state law, the instruction is
not commanded by the federal constitution.  Thus, even if erroneous, the state courts' determination that the state-law
charge was properly given in this case is a determination of state law that does not raise a claim cognizable on
federal habeas unless a petitioner asserted the claim as a due process violation in state court.  See Duncan, 513 U.S.
at 366 (if habeas petitioner wishes to claim that state court evidentiary ruling denied him due process of law, he must
have raised claim as one of due process in state court)."

> one and no matter what the circumstances, great care must be taken
> to ensure that Commonwealth action does not promote mistaken
> identification.

Appendix, Volume I, Ex. A at 562-564.  The trial court was also quite clear that the jury could

not "[f]ind the defendants guilty unless you are satisfied beyond a reasonable doubt by all of the

evidence, direct and circumstantial, not only that the crimes were committed but that it was the

defendants who committed them."  Appendix, Volume I, Ex. A at 564.

The Superior Court considered this claim on the merits on PCRA review and

rejected it.  More specifically, after considering the appropriate case law on ineffectiveness and

adequacy of a trial court's Kloiber instruction, the Superior Court concluded as follows:

> The record reveals that Henderson positively identified [Petitioner]
> at trial as one of the two assailants involved in the robbery of his
> vehicle.  However, the trial evidence, established that, prior to trial,
> Henderson had only been able to identify [Petitioner]'s
> codefendant, and had not been able to identity [Petitioner].  During
> closing arguments, trial counsel for [Petitioner] emphasized the
> failure of Henderson to identify [Petitioner] before trial, and
> argued:
>
>> And remember Ostell Henderson, he may have sat up here
>> and said I know it was these two guys that night and I know
>> it was these two guys and I know [Petitioner] was the one
>> who sat in the front seat and pulled the gun.  That's not
>> what he told Officer Tremblay that night [after Petitioner's
>> arrest].  He made a statement to Officer Tremblay that's
>> different than what he says here.
>>
>> In the law we call that a prior inconsistent statement.  And
>> when somebody makes a prior inconsistent statement, you
>> can conclude that the person is confused, that they're lying,
>> that they're unreliable.

> *You can choose to believe or disbelieve everything that Ostell Henderson said in this courtroom because of that prior inconsistent statement.*

(emphasis supplied).

At the close of the evidence and following arguments by counsel, the trial court gave the following ***Kloiber*** instruction:

> Identification testimony must be received with caution if the witness, because of bad position, poor lighting or any other reasons did not have a good opportunity to observe the criminal or if the witness in his testimony is not positive as to the identity or if the witness's positive testimony as to the identity is weakened by qualifications, hedging or ***inconsistencies in the rest of his testimony*** . . . .

(emphasis supplied).

Thus, the record reveals that while [Petitioner] is correct in his assertion that he was entitled to a ***Kloiber*** instruction on the specific basis of the complainant's failure to identify him before trial, our review of the record here supports the conclusion of the trial court that the ***Kloiber*** instruction was adequate, since (1) trial counsel had framed her arguments that Henderson's in-court identification was unreliable based upon a "prior inconsistent statement," and (2) the trial court instructed the jury that it must receive Henderson's in-court identification with caution if it found inconsistencies between that identification and the rest of his testimony.  Thus, we conclude (1) that the ***Kloiber*** instruction given by the trial court comported with the evidence at trial, the arguments by the defense, and the relevant legal principles, and (2) that the instruction, while not wholly complete, was adequate to apprise the jury of its duty to receive Henderson's in-court identification of [Petitioner] with caution.

Commonwealth v. Essense, 4 A.3d 687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. S at 5-7 (citations omitted).

32

After explicitly reviewing the evidence presented by the Commonwealth to support its contention that Petitioner had been a participant in all three robberies, the Superior Court also determined that the record did not support Petitioner's assertions that he suffered prejudice as a result of trial counsel's failure to obtain a more complete <u>Kloiber</u> instruction. More specifically, the Superior Court concluded:

> Thus, based upon this evidence, we detect no basis upon which to conclude that there existed a reasonable probability that the outcome at trial would have been different even if trial counsel had requested a more specific ***Kloiber*** instruction, since the lack of identification of [Petitioner] by Mr. Henderson was offset by sufficient and independent circumstantial evidence to convict [Petitioner]. Accordingly, we affirm the order of the trial court that dismissed [Petitioner]'s amended PCRA petition without a hearing.

<u>Commonwealth v. Essense</u>, 4 A.3d 687 (Pa. Super. 2010)(table); Appendix, Volume II, Ex. S at 9 (citations omitted).

Based on our review of this claim, we conclude that Petitioner has failed to demonstrate that the trial court erred in giving the foregoing <u>Kloiber</u> instruction. The trial court gave an adequate <u>Kloiber</u> instruction, and properly explained the law on identification to the jury as required by Pennsylvania law. We further conclude that Petitioner has failed to demonstrate that counsel was ineffective with respect to the <u>Kloiber</u> charge. Counsel's failure to pursue this meritless argument is not ineffective assistance of counsel. <u>Thomas v. Wynder</u>, No. 05-6700, 2007 WL 2085353, at *6 (E.D. Pa. July 19, 2007)(Rufe, J.). Counsel did not deprive Petitioner of a fair, reliable trial. <u>Strickland</u>, 466 U.S. at 687. Thus, this claim must be denied in its entirety.

For all of the foregoing reasons, I make the following:

33

**<u>RECOMMENDATION</u>**

AND NOW, this    4th    day of June, 2012, IT IS RESPECTFULLY

RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an evidentiary

hearing.  There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  <u>See</u> Local

Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.


BY THE COURT:


 */s/ Henry S. Perkin*                                          
HENRY S. PERKIN

UNITED STATES MAGISTRATE JUDGE

34